OPINION OF THE COURT
Ernest L. Signorelli, S.
" In the above-entitled accounting proceeding, the guardian ad litem appointed by the court has resigned his position at the insistence of the court due to an apparent conflict of interest. He now seeks compensation for legal services which he claims he rendered on behalf of his wards prior to his resignation. The executors and the successor guardian ad litem have filed objections to the former guardian ad litem’s claim for compensation. In the interest of avoiding any further delay in the resolution of this proceeding, they have since stipulated and agreed with the former guardian ad litem to submit the question to the court for its determination.
The former guardian ad litem was appointed by the court on June 19, 1979, and he thereafter duly consented to act by filing with the court its form “Consent to Act” as required by the rules of this court. He therein certified to *989 the court, inter alla, that he had no interest in the proceedings adverse to or in conflict with that of his wards.
Citibank, the nominated coexecutor and trustee under the decedent’s will, which had a pending claim against the estate, renounced its right to serve in a fiduciary cápacity. This claim was subsequently negotiated with the executors and settled. In schedules annexed to the executors’ accounting, the settlement of this claim is set forth and explained therein. Apparently, Citibank, formerly the First National City Bank, had made loans approximating the sum of $1,800,000 to a corporation in which the decedent had an interest. This indebtedness had been personally guaranteed by the decedent and four other individuals. The executors of the decedent’s estate thereafter paid to Citibank the sum of $375,000 in full satisfaction of its claim against the decedent. It is, of course, the responsibility of the guardian ad litem to pass upon the propriety of the settlement of this claim. The guardian ad litem would have to be satisfied that the settlement entered into between Citibank and the executors was in the best interests of his wards since the compromised claim would in part be paid from their legacies.
At the time of his appointment, the former guardian ad litem neglected to reveal to the court that his law firm represented and continues to act for Citibank. He first apprised the court of his apparent conflict of interest approximately nine months following the date of his appointment, and the court thereupon promptly accepted his resignation and relieved him of any further responsibility in this matter. In explanation of his not having initially disclosed to the undersigned this apparent conflict of interest, he stated that he had discussed this matter with both the accounting clerk and his deputy, and they had presumably assured him that there would be no impropriety in accepting this appointment. Parenthetically, the clerks in question who are lay persons, have advised the court that they have no recollection of ever having discussed this matter with the former guardian ad litem. Consequently, by accepting this appointment, the former guardian ad litem placed himself in the unseemly position of having to serve and placate two opposing interests, *990 namely, the interests of his law firm’s client, Citibank, and the interests of his wards.
The relation óf a guardian ad litem to his ward “is in essence the same as that of a regularly retained attorney to ah adult client.” (Matter of Curley, 161 Misc 391, 398.) An attorney should not accept employment from a cliént which has the potential of adversely affecting his judgment on behalf of another client. (Chinatown Apts, v New York City Tr. Auth., 100 Misc 2d 495.) If, as in the case at bar, an attorney has a continuing relationship with one client and then accepts employment from another client with differing interests, the “adverse representation is prima facie improper”. (Cinema 5 Ltd. v Cinerama, Inc., 528 F2d 1384, 1387.)
An attorney may only represent multiple clients if it is obvious that he can adequately represent the interest of each, and if each consents to the representation after full disclosure of the possible effect of such representation oh the exercise of his independent judgment. (DR 5-105, subd [C].) Since the guardian ad litem’s wards were under a disability, they could not legally give such consent. Therefore, the better course would have been for the guardian ad litem to have disqualified himself immediately, because “even if the interests of these parties were not adverse, the appearance of representing conflicting interests would be enough to warrant disqualification.” (Sapienza v New York News, 481 F Supp 676, 680.) Canon 2 of the Code of Professional Responsibility mandates withdrawal if it is obvious, or should be obvious, to an attorney that continued employment will result in the violation of a disciplinary rule. (DR 2-110, subd [B], par [2].) We who are involved in the administration of justice must not only be fair and just in our dealings, but we must also be scrupulously careful that we avoid the appearance of any impropriety (DR 9-101; EC 9-6).
Within three days after his appointment, the former guardian ad litem examined the court’s file in this proceeding, and the apparent conflict of interest was, or should have been discovered at that time. He should have then advised the court of his dilemma and requested that he be relieved of his assignment. In that event the ser *991 vices for which he seeks compensation would not have been performed. As a result of the foregoing, the resolution of this accounting proceeding has been impeded and unduly delayed, and the estate has undoubtedly suffered thereby. It would now be improvident for the court to saddle this estate with additional guardian ad litem counsel fees.
The court is, accordingly, constrained to deny the former guardian ad litem any award for legal services rendered.